PUERTO RICO URBAN RENEWAL AND HOUSING CORPORATION, Plaintiff and Appellee, *v.* JOSÉ PEÑA UBILES, Defendant and Appellant.

No. CE-66-8.     Decided September 21, 1967.

*José Peña Ubiles* on his own behalf and *Nicanor Vázquez Torres* for petitioner-appellant. *José R. Vélez Torres, José M. Cabrera Deetjen,* and *Josefina Ruiz Carrillo* for appellee. *Arturo Aponte Parés* as amicus curiae.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On April 1, 1965, the Puerto Rico Urban Renewal and Housing Corporation, a public corporation created by Act No. 88 of June 22, 1957, as amended by Act No. 109 of June 26, 1958, as lessor, and José Peña Ubiles, as lessee, executed a lease contract in relation to a dwelling in Urbanización Padre Rivera in Humacao. The following agreement was contained in said contract: "This contract is in force during the initial period from April 1, 1965 to April 30, 1965, both inclusive and henceforth it may be extended for successive periods of one month until the lessor, after notifying the lessee or his family 15 days in advance, decides not to extend it." If we have correctly understood the lessor's position, the Urban Renewal and Housing Corporation of Puerto Rico understands, that the lessor, although there be no cause or violation of contract to justify it, may terminate the contract, at its own will, by simply sending a notice to that effect fifteen days before proceeding to the immediate eviction of the tenant.

The first court to intervene in this matter, the District Court of Puerto Rico, Humacao Part, speaking through Judge R. Adolfo de Castro, denied the unlawful detainer requested on the ground that the exercise of such contractual right was contrary to the moral and public order, reasoning its denial as follows: "Although the government represented by URHC (plaintiff) is not engaged in speculation in the rental of dwellings and its creation was precisely determined to curb some of the evils which adversely affect the housing problem in Puerto Rico, the policy of the People binds it as it does to any other citizen. The fact that there is a contract between the State and an individual should not be considered as an exception. As it was decided in Rodríguez v. Municipality, 75 P.R.R. 449, 464 (1953): 'When a government has a contract with an individual, it must be construed as if it were one between individuals.' It would be abusive, unfair, unreasonable, and oppressive to evict a

citizen in Puerto Rico without any other cause than the will of the lessor notified 15 days prior to the date fixed by it for the eviction."

In reversing the preceding judgment the Superior Court of Puerto Rico, Humacao Part, the second court which intervened in this question speaking through its Judge, reasoned the reversal in the following terms: "On the other hand, it is a well-settled rule sanctioned by the Supreme Court of Puerto Rico that in the application of principles relating to contracts, the State, acting by itself or through an agency or instrumentality, does not have more rights, powers, and prerogatives than a private citizen. And if in the sphere of free contracting between citizens, a clause by virtue of which the lessor may request the surrender of the leased property, upon serving the notice mentioned in the clause of the lease contract in controversy, would be perfectly valid, we do not see why the rule may be altered in the case at bar merely because the State or one of its agencies or instrumentalities appears as lessor. Such construction is strained from every point of view. Even more. The trial court did not have any affirmative evidence to the effect that defendant did not agree to the resolutory condition of the contract of his free will and spontaneously. There was complete absence of evidence on this point."

■■ When dealing with the construction of a contract it is sufficient to present said contract in evidence, or that reference be made thereto when studying any question of law recited in said contract. Although adhesion is not by itself a declaration of nullity, it is, at least, a rule of contractual interpretation which by the reduction of bilaterality to a minimum binds us to reestablish the consensual spirit through a less favorable construction of the text against the party who was in a position to impose the greatest number of onerous conditions stated in the contract.

■ We agree with the opinion of the first trial court of Humacao that any contract which is contrary to the public purpose for which it was executed and which leaves to the will of a single party the termination thereof, irrespective of the juridical conduct of the obligor, is contrary to law, morals, and public order.

For this reason we cannot agree with the opinion of the second trial court of Humacao, that a contract may render ineffective the provisions of law, of morals, or of public order uniformly established by legislation, the customary decalogue, and the politically organized society. No person, and among those subject to law is the State itself, may, by virtue of a contract, set aside or modify in such a fashion as to be equivalent to the annulment of its juridical rule, any law, custom or the public purposes of the political order. The same could be said about legislation. Laws cannot turn a human being into a slave, or authorize a confiscatory contract, or alter the public trust which is the function of every State since it would be afoul of the luminous sense of our constitutional law wholly designed for the protection of the dignity of the human being.

■ In this sense, we quote the stimulating and generously enlightening words of Mr. Justice Douglas of the Supreme Court of the United States, in a similar case, in his concurring opinion in *Thorpe* v. *Housing Authority*, 386 U.S. 670, 676, and 678–680 (per curiam) (April 17, 1967):
"Under the rationale of the North Carolina Supreme Court, a public housing authority, organized under state law and operating a housing project financed by federal and state funds, is assimilated to the position of a private property owner who can terminate a lease for any reason or no reason at all . . . . Over and over again we have stressed that 'the nature and the theory of our institutions of government, the principles upon which they are supposed to rest . . . do not mean to leave room for the play and action

of purely personal and arbitrary power' [citations] and that the essence of due process is 'the protection of the individual against arbitrary action.' [citations] Any suggestion to the contrary 'resembles the philosophy of feudal tenure.' Reich, The New Property, 73 Yale L.J. 733, 769. It is not dispositive to maintain that a private landlord might terminate a lease at his pleasure. For this is government we are dealing with, and the actions of government are circumscribed by the Bill of Rights and the Fourteenth Amendment. 'The government as landlord is still the government. It must not act arbitrarily, for, unlike private landlords, it is subject to the requirements of due process of law. Arbitrary action is not due process.' [citation] . . . This does not mean that a public housing authority is powerless to evict a tenant. A tenant may be evicted if it is shown that he is destroying the fixtures, defacing the walls, disturbing other tenants by boisterous conduct and for a number of other reasons which impair the successful operation of the housing project. Eviction for such reasons will completely protect the viability of the housing project without making the tenant a serf who has a home at the pleasure of the manager of the project or the housing authority."

■ Having examined the contract in question, we find that it is a contract—supposedly for the whole life of the tenant and even that of his heirs, which is the right aspiration of the protected lease—which one month after it is signed loses all its protection for the tenant and leaves him at the mercy of the Manager of the Authority. This contract is contrary to the spirit of economic protection and social relief which underlies the legislation which created it, it is contrary to law since because of the mere fictitious expiration imposed by the lessor it annuls the automatic extension to which private leases are entitled, and it is contrary to the morals because it tends to immobilize the juridical will of man within a pragmatic conception of an

ideal state, conceived in abstract, with the corresponding curtailment of human values.

Therefore, having examined the public purposes of the statute which authorizes the housing project, the law and the concept of property of our Constitution and the civil law, we decide that the expiration of the term of the contract according to the juridical business submitted to us, cannot be ground for eviction in Puerto Rico in any ordinary or special possessory action.

For the reasons stated the judgment rendered by the Superior Court of Puerto Rico, Humacao Part, on December 17, 1965, in civil case No. CS-65-1638 will be reversed, and the judgment rendered by the District Court of Puerto Rico, Humacao Part, on September 20, 1965, in civil case No. CD-65-128 will be affirmed.

Mr. Justice Blanco Lugo and Mr. Justice Ramírez Bages dissented.